**Norfolk**

GUY STANLEY WILLIAMS

v.

COMMONWEALTH OF VIRGINIA

No. 0868-90-1

Decided March 24, 1992

COUNSEL

Inga A. Eglitis Francis (Richard L. Francis; Francis and Francis, on brief), for appellant.

Janet F. Rosser, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

BAKER, J.—Guy Stanley Williams (appellant) appeals from a judgment of the Circuit Court of Southampton County (trial court) which approved a jury verdict convicting him for the first degree murder of John Thomas (victim). He alleges that the judgment should be reversed because (1) the trial court erroneously failed to suppress evidence of his statement to the police and clothes taken from him by them without first administering

*Miranda* warnings, (2) the Commonwealth lost evidence to the prejudice of the defense, (3) the trial court erroneously refused a defense instruction, and (4) the trial court failed to exclude from the total jury panel several potential jurors who were challenged for cause. For the reasons that follow, we reverse and remand.

## I. *MIRANDA* WARNINGS

Following the attack on the victim, appellant went to the hospital where the victim was taken. At the hospital, appellant was considered a suspect. A sheriff, intending to question appellant, gave him proper *Miranda* warnings. After voluntarily waiving his rights, appellant began verbally abusing the sheriff, causing the sheriff to arrest him for that misconduct. At the police station, other officers began questioning appellant without providing any further warning. Appellant's motion to suppress was denied.

> "[W]here a person, after receiving *Miranda* warnings, has once given a knowing and intelligent waiver of his constitutional rights, such waiver will be presumed to continue in effect throughout subsequent custodial interrogations until the suspect manifests, in some way which would be apparent to a reasonable person, his desire to revoke it."
>
> An express written or oral statement of waiver of rights is not required. Waiver can be inferred from the actions and words of the person interrogated.

*Cheng v. Commonwealth*, 240 Va. 26, 35, 393 S.E.2d 599, 604 (1990)(citations omitted). The trial court did not err in overruling appellant's motion to suppress.

## II. LOST PHOTOGRAPHS

Appellant further alleges that he was denied due process because of the loss of photographs taken of his wounds. Appellant has demonstrated no evidence of bad faith by the police, and, in the absence thereof, the failure to preserve potentially useful evidence does not constitute a denial of due process. *See Arizona v. Youngblood*, 488 U.S. 51, 56 (1988).

## III. JURY INSTRUCTIONS

Appellant alleges that the trial court erred in failing to grant "jury instructions that were offered by the defense." In support of that statement, without any specificity, his argument in his brief is as follows:

Without unduly belaboring the point, the defense contends that the facts and testimony that are recited at length in the statement of facts supports the assertion that the jury was not given sufficient instructions to be able to carefully evaluate the totality of the evidence and to recognize legally mitigating facts.

At oral argument, no reference was made to this alleged error. We find that the trial court properly instructed the jury on the issue presented to them. We further find that appellant's allegations at trial and on appeal on this issue do not meet the requirements of Rules 5A:18 and 5A:20. *See Fitzgerald v. Bass*, 6 Va. App. 38, 56 n.7, 366 S.E.2d 615, 625 n.7 (1988)(*en banc*).

## IV. JURORS

On *voir dire*, appellant discovered that jurors Porter, Wright and Futrell were closely associated with victim and/or his family. Juror Warren was closely associated with appellant's family. Porter, Warren and Futrell were removed by peremptory strikes of defense counsel. Wright served on the jury that convicted appellant.

### A. JUROR PORTER

Porter had heard "that the defendant had murdered the deceased and that afterwards he had followed up by going to the hospital or something to be sure or to know if the [victim] was dead." Porter is a pastor. He was contacted by victim's family and eulogized the victim at his funeral. Porter claimed that none of the above would affect his judgment and that he could decide the case "on what [he] heard in [the] courtroom." Defense counsel challenged Porter for cause and moved that he be excluded from the panel. The Commonwealth joined in the motion; however, the trial court refused to exclude Porter. Porter was removed by a peremptory strike of defense counsel.

## B. JUROR WRIGHT

Wright stated that he had worked with victim doing the same job for "three or four months." He saw him every day. Wright had heard details of how appellant went to victim's house, knocked on the door and called him outside, and from that engagement the stabbing occurred. Wright asserted he could decide the case on what he heard in the courtroom. Although challenged for cause, Wright served on the trial jury panel.

## C. JUROR WARREN

Warren knew appellant's family, belonged to the same hunt club as appellant's father, had read about the case in a local newspaper, and knew that the victim had been stabbed to death. Warren stated that because he had known the family so long, he would rather not sit in judgment of appellant. Warren also stated that, although it would "bother" him to sit, he thought he "would give a good judgment about it." Both the Commonwealth and defense counsel moved the court to excuse Warren for cause. The trial court overruled both motions. Warren was removed by a peremptory strike of defense counsel.

## D. JUROR FUTRELL

Futrell stated he had heard the victim was "defenseless," that Futrell's wife "used to work with [the victim's] mother, and that he had read that the victim "had a horrible death." When he was asked whether he had an impression that appellant was guilty, he first hedged the question, asking if he could be relieved of duty because when he heard about the death "it took hold of me." He subsequently conceded that he had an impression that appellant was guilty but that he could decide the case based on what he heard in the courtroom, although he would rather not sit. The defense motion to strike Futrell for cause was denied. Futrell was then removed by a peremptory strike of defense counsel.

The right of an accused to trial by "an impartial jury" is a constitutional right. The constitutional guarantee is reinforced by legislative mandate and by the rules of this Court: veniremen must "stand indifferent in the cause."

*Breeden v. Commonwealth*, 217 Va. 297, 298, 227 S.E.2d 734, 735 (1976)(citations omitted).

■ "The issue of who is, or is not, a competent juror is one for the trial court to decide, and in making its decision, the court may exercise . . . reasonable discretion." *Slade v. Commonwealth*, 155 Va. 1099, 1106, 156 S.E. 388, 391 (1931). If that discretion is not abused, the trial court's decision on the matter is final. *Id.*; *see also Justus v. Commonwealth*, 220 Va. 971, 976, 266 S.E.2d 87, 91 (1980). In determining whether the trial court failed to properly exclude a juror, "*Wright v. Commonwealth*, 73 Va. (32 Gratt.) 941, 943 (1879) teaches us that where there is a reasonable doubt whether a juror is qualified, that doubt must be resolved in favor of the accused." *Salina v. Commonwealth*, 217 Va. 92, 94, 225 S.E.2d 199, 200 (1976).

> If, upon *voir dire* examination or upon other competent evidence, it appears that a juror does not stand indifferent in the cause, another shall be drawn or called and placed in his stead for the trial of that case. It is the duty of the trial court, through the legal machinery provided for that purpose, to procure an impartial jury to try every case.

*Id.* at 93, 225 S.E.2d at 200 (citations omitted); *see also Slade*, 155 Va. at 1106, 156 S.E. at 391.

■ In determining whether a juror is free from prejudice, nothing should be left to inference or doubt. *See Dejarnette v. Commonwealth*, 75 Va. 867, 871 (1881); *Washington v. Commonwealth*, 86 Va. 405, 407, 10 S.E. 419, 420 (1889). If a juror has come to a conclusion and expressed a decided opinion as to the guilt or innocence of the accused, he is incompetent to serve, and it matters not whether the opinion is founded upon mere hearsay or rumor. *Wright*, 73 Va. (32 Gratt.) at 943.

In *Wright*, the juror stated that he had formed an opinion as to appellant's guilt from newspaper accounts and rumors he had heard. Although the juror subsequently stated in response to a question by the court "that he could come to the trial with an unbiased and unprejudiced mind, and give the accused a fair and impartial trial," the Supreme Court held that the juror should have been stricken for cause:

> But whether the opinion be hypothetical or decided, whether founded on rumor or upon evidence heard at a trial, the juror must be free from prejudice against the accused.

He must be able to give him a fair and impartial trial. Upon this point nothing should be left to inference or doubt. All the tests applied by the courts, all the enquiries made into the state of the juror's mind, are merely to ascertain whether he comes to the trial free from partiality and prejudice.

If there be a reasonable doubt whether the juror possesses these qualifications, that doubt is sufficient to insure his exclusion. For, as has been well said, it is not only important that justice should be impartially administered, but it should also flow through channels as free from suspicion as possible.

*Id.*

A brief summary of the *voir dire* of these four members of the total panel discloses that upon cross-examination by the trial court and/or the Commonwealth Attorney, each juror stated that he could judge the case on the evidence presented in court. One gave the funeral eulogy; one worked side-by-side daily with the victim for three or four months and heard that appellant went to the victim's house, called him outside and stabbed him to death; one was so closely associated with appellant's family that it would "bother" him to sit in judgment of appellant; and one had read of the "horrible" death that befell victim, had formed an impression of appellant's guilt, and pleaded that he not be required to sit in judgment of appellant because from what he had heard it "took hold" of him. All four jurors were closely associated with either the accused or the victim and their respective families. The information to which they were exposed and/or conclusions they had formed, coupled with their associations, raise reasonable doubt that they could "stand indifferent in the cause." When the trial court declined to select other jurors, it failed in its duty to procure a jury free from prejudice. The trial court erred in not excluding them and the error was not cured by the fact that three of the four were struck by counsel. *See Martin v. Commonwealth*, 221 Va. 436, 271 S.E.2d 123 (1980)(where the court held it was prejudicial error for the trial court to force a defendant to use the peremptory strikes afforded him by Code § 19.2-262 to exclude a venireman who is not free from exception).

█ We recognize that each of these jurors responded to questions from the trial court and the Commonwealth Attorney which indicated that they could give appellant a fair trial. But answers

to leading questions by the trial court or the Commonwealth Attorney do not *per se* remove the taint resulting from expressed impression of guilt or bias. Proof that a prospective juror is impartial and fair should come from the juror and not be based on his or her mere assent to persuasive suggestions. *Breeden*, 217 Va. at 300, 227 S.E.2d at 736 (citing *Parsons v. Commonwealth*, 138 Va. 764, 773, 121 S.E. 68, 70 (1924)).

While finding that a reasonable doubt exists under the facts shown here as to the jurors' ability to sit impartially, we do not establish a *per se* rule. That principle clearly has been rejected by our Supreme Court. *See Watkins v. Commonwealth*, 229 Va. 469, 480, 331 S.E.2d 422, 431-32 (1985), *cert. denied*, 475 U.S. 1099 (1986). However, we conclude that, under the circumstances of this case, these jurors should have been excluded for cause.

Common sense and everyday knowledge teaches us that pastoral duties to the grieving family of a deceased person extend beyond the eulogy. Solace and comfort are required and expected by both the pastor and the bereaved. The record discloses a reasonable doubt that Pastor Porter, after performing the eulogy and bound by his obligations to the victim's family, could join in a verdict of not guilty and thereafter continue to exercise his pastoral duties to that family.

Receiving information from the news media or by common gossip did not *per se* disqualify Futrell; however, when he stated that he came to court with an impression that appellant was guilty, he obviously no longer presumed appellant to be innocent.

Warren's plea to be excused because of his association with appellant's family revealed a person so troubled that the prosecution joined with the defense counsel in moving that Warren be excused for cause. Reasonable doubt exists that Warren "stood indifferent in the cause."

Wright worked with the murder victim daily for three or four months performing the same job. This fact creates a reasonable doubt that he could fairly judge the person charged with the murder. That doubt must be resolved in favor of the accused. *See Salina*, 217 Va. at 94, 225 S.E.2d at 200.

For the reasons stated, we reverse the judgment conviction and remand this case to the trial court for such further proceedings as the Commonwealth may be advised.

*Reversed and remanded.*

Moon, J., and Willis, J., concurred.